IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>vs.<br><br><br>MINH HOANG,<br><br>     Defendant. | ORDER AND<br>MEMORANDUM OF DECISION<br>RE: MOTION TO SUPPRESS (#104)<br><br><br>Case No. 2:17-cr-0444-TC |

The superseding indictment charges Defendant Minh Hoang with eleven counts of violating 18 U.S.C. § 1832, Theft of Trade Secrets. (ECF No. 70.) He is accused of illegally downloading trade secrets that belonged to his employer, Becton, Dickinson, and Company (BD). As part of its investigation, the United States executed four warrants. Mr. Hoang now moves to suppress evidence uncovered through these warrants. (ECF No. 104.)

The first warrant was issued on September 14, 2015. It authorized agents to search Mr. Hoang's home and, among other things, seize any computer or computer storage devices discovered. (ECF No. 107-1.) The second warrant, issued on September 18, 2015, authorized agents to search these computer storage devices for evidence of stolen trade secrets. (ECF No. 107-2.) The third warrant was issued the same day. Part I of that warrant directed Comcast Corporation to give the United States all data it possessed from the email account

"hoangmqh@comcast.net."  Part II of the warrant authorized the United States to search this data

for evidence of stolen trade secrets.  (ECF No. 107-3.)  Finally, on March 16, 2016, a warrant

was issued requiring that Google, Inc., turn over all email data for the email account

"rchakroborty@gmail.com," and authorizing the United States to search this data for violations

of trade secret laws.  (ECF No. 107-4.)

## ANALYSIS

I.    **First, Second, and Third Warrants**

    A.  <u>Hearsay</u>

Mr. Hoang argues the evidence obtained from the first, second, and third warrants should

be suppressed because the affidavits offered in support of the warrants improperly relied on

double hearsay.

The warrants were each supported by an affidavit signed by FBI Special Agent David

Rawlings, who declared that "[t]he information contained in this affidavit is based primarily on

information received from attorneys representing [BD] based on an internal investigation by BD,

on my personal knowledge and limited investigation, and [on] information that I received from

other law enforcement agents and officers assisting in this investigation."  (Affidavit in Support

of Warrant Application ("Rawlings Affidavit") ¶ 2, ECF No. 107-1.)[1]

The information in the Rawlings Affidavit came from an investigation by BD's officers.

They passed the information to BD's attorneys, and BD's attorneys provided it to Special Agent

---

[1] The background information contained in each affidavit is identical.  (<u>Compare</u> ECF No. 107-1 <u>with</u> ECF Nos. 107-2, 107-3.)  Accordingly, the court refers to these affidavits collectively as the "Rawlings Affidavit" and cites solely to the affidavit filed in support of the first warrant, except when material contained only in the second or third warrants is discussed.

Rawlings.[2]  Mr. Hoang claims that, because of these layers of hearsay, the warrant was not supported by probable cause.

There is no rule against hearsay in warrant applications.  "This court has long held hearsay, and even multiple layers thereof, 'may support a finding of probable cause for a search warrant.'"  United States v. Freerksen, 457 F. App'x 765, 769 (10th Cir. 2012) (quoting United States v. Mathis, 357 F.3d 1200, 1204 (10th Cir. 2004)).  Instead, the question is whether the hearsay is sufficiently reliable to allow a judge to conclude, in view of the totality of the circumstances, that there was probable cause to justify a search.  See Cortez v. McCauley, 478 F.3d 1108, 1118 n.10 (10th Cir. 2017).  In weighing whether information is reliable, courts consider, among other things, whether the information comes from known or anonymous sources, how the sources acquired their information, and how detailed the information is.  See, e.g., United States v. Pulliam, 748 F.3d 967, 971 (10th Cir. 2014); United States v. Hendrix, 664 F.3d 1334, 1338-39 (10th Cir. 2011); United States v. Danhauer, 229 F.3d 1002, 1005-06 (10th Cir. 2000).

Here, BD's attorneys identified themselves and identified by name the individuals involved in the internal investigation.  (Rawlings Affidavit ¶¶ 42-44, 70-72, 77, 78, 81, 83, 85.) BD provided a detailed account of why Mr. Hoang's conduct made them suspicious and to what lengths they went to investigate him.  (Id. ¶¶ 70-99.)  And BD gave Special Agent Rawlings

---

[2] Mr. Hoang's motion specifically requested that the United States provide additional detail regarding whether any portions of the Rawlings Affidavit came from Special Agent Rawlings's personal investigation, rather than from BD's attorneys.  (See Motion at 9 n.2 (ECF No. 104).)  The United States did not address this issue in its opposition brief or at the motion hearing.  In any event, it is clear from context that most, if not all, of the information in the Rawlings Affidavit came directly from BD's attorneys.

details about Mr. Hoang's alleged thefts.  (Id. at ¶¶ 58-70, 93.)  Cumulatively, this information was sufficiently reliable to provide probable cause for the warrant.

None of the cases cited by Mr. Hoang are to the contrary.  In Cortez, a two-year-old claimed a man had touched her sexually.  The child's mother told a nurse what the child had said, and the nurse told the police.  The police arrested the man before either the nurse or the police ever spoke to the child.  The Tenth Circuit held that the officers did not have probable cause for the arrest.  Cortez, 478 F.3d at 1118.  These facts are far different than the facts here.  The source of the information here—BD's officers and attorneys—is much more reliable.

At the motion hearing, Mr. Hoang contended that Cortez, at a minimum, required some level of corroboration of the facts by the police.  But the Cortez court explicitly stated that, depending on the context, corroboration may not be necessary.  Id. at 1118 n.11. ("[W]e do not suggest a per se rule that unsubstantiated double-hearsay testimony can never give rise to probable cause. There, in fact, may be situations in which a double-hearsay statement involves individuals or circumstances of sufficient trustworthiness to give rise to probable cause.").

Mr. Hoang also cites to Ruttkamp v. De Los Reyes, No. 3:10-cv-392 (SRU), 2012 WL 3596064 (D. Conn. Aug. 20, 2012) and Nieves v. New York City Police Department, No. 07 Civ. 5751 (SAS), 2010 WL 330305 (S.D.N.Y. May 18, 2010).  But in both of those cases, the police informants had no personal connection to the alleged crimes and were several steps removed from those with actual knowledge of what had occurred.  Here, BD's officers and attorneys were much more reliable.

Mr. Hoang argues Special Agent Rawlings should not have relied on the BD attorneys' hearsay because the events they recounted were not recent enough: BD was aware Mr. Hoang

was downloading confidential material in June and July but did not report it to the FBI until September. (Rawlings Affidavit ¶¶ 58-59.) While the court agrees that a delay in reporting crimes may make the information less reliable (see, e.g., United States v. Snow, 919 F.2d 1458, 1459-60 (10th Cir. 1990)), any delay here was understandable given that BD decided to investigate Mr. Hoang's conduct internally before informing the FBI. Especially because Mr. Hoang's alleged misconduct was ongoing—BD also accused him of downloading material in August and September (Rawlings Affidavit ¶ 60(h))—the information BD supplied to the FBI was not stale.

In sum, the court concludes Special Agent Rawlings's reliance on hearsay did not affect the validity of the warrants.

B. Probable Cause

Mr. Hoang is accused of violating 18 U.S.C. § 1832, which states:

Whoever, with intent to convert a trade secret, that is related to a product or service used in or intended for use in interstate or foreign commerce, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret, knowingly—

(1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains such information;

(2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys such information;

(3) receives, buys, or possesses such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization;

(4) attempts to commit any offense described in paragraphs (1) through (3); or

(5) conspires with one or more other persons to commit any offense described in paragraphs (1) through (3), and one or more of such persons do any act to effect the object of the conspiracy,

shall, except as provided in subsection (b), be fined under this title or imprisoned not more than 10 years, or both.

Mr. Hoang argues that to secure a warrant, the United States was required to show that it had probable cause for each element of the crime. The United States responds that it need only show that there was probable cause that the crime as a whole was committed and states that the court need not undertake an element-by-element analysis of the Rawlings Affidavit.

The Tenth Circuit has recognized a split of authority on this issue, but it has not resolved the question:

> [W]e lack precedential decisions on the necessity of probable cause for each element of a suspected crime. On that issue, the circuits are divided. Compare Spiegel v. Cortese, 196 F.3d 717, 724 n.1 (7th Cir. 2000) (stating that probable cause is unnecessary on each element of a crime), and Gasho v. United States, 39 F.3d 1420, 1428 (9th Cir. 1994) ("[A]n officer need not have probable cause for every element of the offense."), with Williams v. Alexander, Ark., 772 F.3d 1307, 1312 (8th Cir. 2014) ("For probable cause to exist, there must be probable cause for all elements of the crime."), and United States v. Joseph, 730 F.3d 336, 342 (3d Cir. 2013) ("To make an arrest based on probable cause, the arresting officer must have probable cause for each element of the offense."). Neither our court nor the Supreme Court has weighed in on this circuit split.

United States v. Argueta-Mejia, 615 F. App'x 485, 489-90 (10th Cir. 2015).

In Argueta-Mejia, the Tenth Circuit held only that it was permissible—without deciding whether it was required—for the district court to review each element in evaluating probable cause. Id. The United States cites no case law suggesting the Tenth Circuit or the Supreme Court has resolved this issue in the four years since Argueta-Mejia was decided.

This court need not decide this issue because the United States has demonstrated probable cause for each element.

Mr. Hoang asserts that the United States did not have probable cause for four of the elements necessary to prove a violation of the trade secrets law. When a warrant is challenged on its face, the court looks within the four corners of the affidavit to determine whether the warrant is supported by probable cause. Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 565 n.8 (1971), cited in United States v. Beck, 139 F. App'x 950, 954 (10th Cir. 2005).

First, Mr. Hoang argues that the materials downloaded by Mr. Hoang were not trade secrets. The Rawlings Affidavit states that BD subjectively believed the material included trade secrets, but, according to Mr. Hoang, this is not enough to demonstrate that the material is objectively a trade secret. The court disagrees. To be a trade secret, there must have been "reasonable measures to keep [the] information secret," and the information must "derive[] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3)(A). BD's subjective belief that the material included at least some trade secrets is highly relevant to this inquiry. BD went to great lengths to keep its material private, including through employment contracts and the monitoring of its employees' computers. (Rawlings Affidavit ¶¶ 50-54, 58-69.) A reasonable person could conclude that BD would only do this if the material was economically valuable and not widely accessible. BD's conduct provides probable cause that the material included trade secrets.

Second, Mr. Hoang contends the Rawlings Affidavit fails to show that his conduct was unauthorized. But the Rawlings Affidavit asserts that Mr. Hoang downloaded trade secrets, and that his employer reported him to the FBI because of it. (Id. at ¶ 70 ("BD representatives told

Your Affiant that there would be no legitimate reason for [Mr.] Hoang to possess and download such confidential BD information. Further, they told Your Affiant that there would be no legitimate reason for [Mr.] Hoang to download any of BD['s] proprietary information to external devices such as thumbdrives.").) That provides probable cause that the downloads were unauthorized. Mr. Hoang may prevail at trial in proving, as he claims, that his conduct was authorized, but that goes to the United States' ultimate burden at trial. For purposes of getting a warrant, probable cause existed.

Third, to violate the statute, Mr. Hoang must have known that the documents he was downloading were trade secrets. Mr. Hoang argues that the Rawlings Affidavit shows only that BD thought the documents contained trade secrets, not that Mr. Hoang knew they were trade secrets. But Mr. Hoang signed a nondisclosure agreement that defined trade secrets and warned employees not to disclose trade secrets. (Id. at ¶¶ 53-54.) This shows that Mr. Hoang at least should have known the material he was taking included trade secrets. And the Rawlings Affidavit alleges that Mr. Hoang lied about which documents he had downloaded during BD's investigation, which further supports the United States' suspicions that Mr. Hoang recognized the seriousness of taking this material. (Id. at ¶¶ 87-88.) This is sufficient.

Finally, Mr. Hoang asserts that the United States cannot show that Mr. Hoang acted with the intent to economically benefit a third party. He notes that the Rawlings Affidavit vaguely speculates that BD could be damaged if Mr. Hoang shared the material with a third party but does not suggest that BD has actually been damaged by a third party. This argument is based on a misstatement of the law. The statute requires only that a person intends "to convert a trade secret . . . to the economic benefit of anyone other than the owner thereof." 18 U.S.C. § 1832(a).

In other words, the statute includes Mr. Hoang taking the trade secret to benefit himself, rather than a third party. And Mr. Hoang's intent to benefit himself was addressed in the Rawlings Affidavit. (See Rawlings Affidavit ¶¶ 70, 95, 99.)

Accordingly, the court concludes the United States had probable cause to obtain warrants to search Mr. Hoang's home, computer files, and email account.

C.  Franks Hearing

In his reply in support of the motion, Mr. Hoang requests a Franks hearing.[3]  In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court held that when the truthfulness of a warrant application has been challenged, an evidentiary hearing may sometimes be necessary.

> [W]here [a] defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

Id. at 155.

Mr. Hoang does not suggest that Special Agent Rawlings knowingly made any false statements.  Rather, he claims that BD's officers and attorneys made false statements to Special Agent Rawlings, and he recklessly believed and repeated them.  But a Franks hearing request may not be granted based on an informant's false statements.  See United States v. Sanchez, 725 F.3d 1243, 1247 (10th Cir. 2013) ("The truthfulness at issue is that of the affiant, not the affiant's

---

[3] In the moving papers, Mr. Hoang makes two requests for an evidentiary hearing, but neither were based on Franks. First, Mr. Hoang requested a hearing to challenge whether any of Special Agent Rawlings' information came from his personal investigation, rather than from BD.  As discussed in footnote 2, the court accepts for purposes of this motion that all of the information came from BD.  Mr. Hoang also requested a hearing on the issue of particularity, but because the court agrees with Mr. Hoang on those arguments based on the briefing alone, as discussed below, no additional evidentiary hearing is necessary.

sources . . . .  It suffices that 'the information put forth is believed or appropriately accepted by the affiant as true.'") (quoting <u>Franks</u>, 438 U.S. at 165).

In any event, if an affidavit provides probable cause even after all erroneous evidence is excluded, then the false statements are irrelevant, and no <u>Franks</u> hearing is necessary.  <u>See</u> <u>Sanchez</u>, 725 F.3d at 1248.  That is the case here.  Mr. Hoang claims BD misrepresented that Mr. Hoang was in Pennsylvania and California at the beginning of September 2015, and that he agreed to be in Utah on September 4, 2015.  (Rawlings Affidavit ¶¶ 77-78, 81, 86, 89-91.)  Mr. Hoang submits credit card statements, flight information, and hotel receipts showing that at the time, he was actually in Maine and Canada, on vacation and attending a wedding.  (<u>See</u> ECF No. 116-2.)  Based on this, Mr. Hoang claims he could not have been in California or Philadelphia, and that he would not have promised to be in Utah on September 4, 2015, knowing he would be in Canada.

Even assuming that BD's statements about Mr. Hoang's location were false, none of these facts actually relate to any of the elements of the alleged crime.  Mr. Hoang's location at the time of the downloads and during the investigation is not an element of trade secrets theft.  Because probable cause would remain even if these statements were removed from the Rawlings Affidavit, Mr. Hoang's request for a <u>Franks</u> hearing is denied.

D.  <u>Particularity</u>

The Fourth Amendment "requires that warrants 'particularly describ[e] . . . the persons or things to be seized.'  U.S. Const. amend. IV."  <u>United States v. Leary</u>, 846 F.2d 592, 600 (10th Cir. 1988).

This requirement prevents a "general, exploratory rummaging in a person's belongings," <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 467, 91 S. Ct. 2022,

2038, 29 L. Ed. 2d 564 (1971) and "'makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another. As to what is [to] be taken, nothing is left to the discretion of the officer executing the warrant.'" Stanford v. Texas, 379 U.S. 476, 485, 85 S. Ct. 506, 511, 13 L. Ed. 2d 431 (1965) (quoting Marron v. United States, 275 U.S. 192, 196, 48 S. Ct. 74, 76, 72 L. Ed. 231 (1927)). . . . "The particularity requirement [also] ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." Voss, 774 F.2d at 404.

The test applied to the description of the items to be seized is a practical one. "'A description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized.'" United States v. Wolfenbarger, 696 F.2d 750, 752 (10th Cir.1982) (quoting United States v. Wuagneux, 683 F.2d 1343, 1348 (11th Cir.1982)).

Id.

Each warrant identifies the material to be seized by referring to a statute, 18 U.S.C. § 1832.[4] Whether citation to a statute makes a warrant sufficiently particular depends on the scope of the statute. "While some federal statutes may be narrow enough to meet the fourth amendment's requirement [of particularity], . . . [others] cover a broad range of activity and the reference to those statutes does not sufficiently limit the scope of the warrant." Id. at 601.

Mr. Hoang contends the warrants here are overbroad, as was the warrant in Leary. In Leary, the defendant operated an export company and was alleged to have illegally exported certain equipment to China. Based on these allegations, a warrant was issued to seize the following property:

---

[4] The first warrant states that the United States may seize "[a]ll records and other evidence relating to violations of Title 18, United States Code, Section 1832, theft of trade secrets, those violations involving Mihn (sic) Quang Hoang . . ." (Attachment B to Warrant, ECF No. 107-1.) The second warrant states that the United States may seize "[a]ll records and other data on the devices described in Attachment A that relate to violations of Title 18, United States Code, Section 1832, theft of trade secrets, those violations involving Mihn (sic) Quang Hoang . . ." (Attachment B to Warrant, ECF No. 107-2.) The third warrant seeks "[a]ll information described above in Section I that constitutes fruits, contraband, evidence and instrumentalities of violations of Title 18 United States Code Section 1832 (Theft of Trade Secrets), those violations involving Minh Quang Hoang, and other unknown co-conspirators, and occurring from January 1, 2015 through September 15, 2015 . . ." (Attachment B to Warrant, ECF No. 107-3.)

> Correspondence, Telex messages, contracts, invoices, purchase orders, shipping documents, payment records, export documents, packing slips, technical data, recorded notations, and other records and communications relating to the purchase, sale and illegal exportation of materials in violation of the Arms Export Control Act, 22 U.S.C. 2778, and the Export Administration Act of 1979, 50 U.S.C. App. 2410.

Id. at 594.

The defendant argued this warrant lacked particularity because the citations to the Arms Export Control Act and the Export Administration Act did not provide any guidance on what was to be taken. Indeed, the officers executing the warrant seized a significant amount of irrelevant material, including "references to sales and sales contacts throughout the world, telexes to Australia and South Africa, information from applicants for employment with [defendant], [defendant's] application with Shearson American Express for personal financial planning, [defendant's] life insurance policy, and correspondence relating to other businesses for which [defendant] acted as sales representative." Id. The Tenth Circuit concluded this warrant lacked sufficient limitations:

> As an irreducible minimum, a proper warrant must allow the executing officers to distinguish between items that may and may not be seized. See 2 LaFave, § 4.6(a), at 235-36. The . . . warrant does not provide that guidance. An unadorned reference to a broad federal statute does not sufficiently limit the scope of a search warrant. Absent other limiting factors, such a warrant does not comply with the requirements of the fourth amendment. See Andresen v. Maryland, 427 U.S. 463, 480-82, 96 S. Ct. 2737, 2748-49, 49 L. Ed. 2d 627 (1976).

Id. at 602.

The court agrees the statute cited here is too broad to provide any meaningful guidance on the search to be conducted. At the time of the search, Mr. Hoang had worked for BD for nearly thirty years. (Rawlings Affidavit ¶ 36.) One can reasonably assume that Mr. Hoang had legitimately accumulated a significant amount of information from BD over those thirty years.

In fact, the officers knew he had such information: BD explicitly informed Special Agent

Rawlings that it believed some of the material downloaded by Mr. Hoang was "mainly personal

information and not BD information or BD trade secrets."  (Id. at ¶ 58.)  BD acknowledged that

not all of the material taken was confidential.  (Id. at ¶ 61.)  And the affidavit consistently

conflates taking confidential information (which may have violated Mr. Hoang's contract with

BD but which would not necessarily violate any criminal law) with taking trade secrets (which

would violate § 1832).[5]  (Id. at ¶¶ 59, 61, 67-70.)  In sum, the United States knew Mr. Hoang had

a significant amount of non-trade secret material from BD in his possession.

But an officer executing a warrant limited only by a citation to § 1832 would have no

means of distinguishing between the non-trade secret material from BD and the trade secret

material from BD.  A trade secret is defined to include any information that the owner has

reasonably attempted to keep secret, and that is valuable because of this secretiveness.  18 U.S.C.

§ 1839(3).  Accordingly, whether something is evidence of a trade secret crime could not have

been determined during the search by an officer absent additional information from BD

identifying what material is secret, what material could be publicly known, or what material

(though secret) is of no economic value.

In Leary, a warrant tied to the violation of certain export laws led to the defendant's

entire business being searched because his entire business involved exports.  Anything he

_____

[5] As far as the court can determine, no court has explicitly addressed whether the definition of trade secrets in §
1839(3) necessarily covers all information identified as confidential in an employment contract.  But the Uniform
Trade Secrets Act (UTSA), which has been adopted by most states, includes an identical definition of trade secrets,
and courts have held in that context that confidential information is not always the same as a trade secret.  See, e.g.,
Hauck Mfg. Co. v. Astec Indus., Inc. 375 F. Supp. 2d 649, 655 (E.D. Tenn. 2004) (collecting cases, and noting that
"the UTSA's preemption provision has generally been interpreted to abolish all free-standing alternative causes of
action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade secret
status.").

possessed could have been, in some way, connected to the alleged violation of the statute. The situation here is analogous. Special Agent Rawlings, who executed the warrant, would have no choice but to seize and search anything in Mr. Hoang's possession that could have possibly come from BD, even though he knew much of the material was not a trade secret, because the citation to the statute provided him with no actual guidance regarding which BD materials were evidence of a breach of the law. Rather than seize evidence of a crime, he would have to seize a significant amount of nonresponsive material and then determine after-the-fact which material could be tied to a violation of § 1832. Under Leary, this process violates the particularity requirements of the Fourth Amendment.

In addition to citing § 1832, the warrants include lists of specific items to be seized or searched. These lists do not save the warrants, for the same reason the lists in the Leary warrant were insufficient:

> Nor did the list of business records to be seized provide any meaningful limitation on the . . . search. The warrant encompassed virtually every document that one might expect to find in a modern export company's office. Again, the fourth amendment requires more. See id.; see also In re Grand Jury Proceedings (Young), 716 F.2d 493, 498 (8th Cir. 1983) ("laundry list of various type of records is insufficient to save the search warrant"); Roberts v. United States, 656 F. Supp. 929, 934 (S.D.N.Y. 1987) ("By listing every type of record that could conceivably be found in an office, the warrant effectively authorized the inspectors to cart away anything that they could find on the premises."); cf. Cardwell, 680 F.2d at 78; Abrams, 615 F.2d at 543; Roche, 614 F.2d at 7; Lafayette Academy, 610 F.2d at 5.

Leary, 846 F.2d at 602.

Here, the lists exacerbate, rather than cure, the overbreadth problems. For example, the first warrant seeks all "records and information relating to BD" and all "BD products, or photos, diagrams, blueprints or other representations of any BD product." (Attachment B ¶¶ 1(n), 1(r),

ECF No. 107-1.)  An officer executing this warrant would not be able to determine which BD

records, information, or products were trade secrets, and which were not.  And the second

warrant explicitly states that the United States is to search all of Mr. Hoang's computer devices

for any "data, photos, files, [or] documents which contain BD confidential information and trade

secrets," (Attachment B, ¶ 1(a), ECF No. 107-2), even though, as noted above, Mr. Hoang's

possession of confidential information would not necessarily be a violation of criminal law.

Accordingly, the court concludes the warrants were not sufficiently particular.[6]

None of the authority cited by the United States is to the contrary.  In <u>United States v.</u>

<u>Christie</u>, 717 F.3d 1156 (10th Cir. 2013), the defendant was accused of spending so much time

on her computer that her three-year-old daughter, BW, died of dehydration.  <u>Id.</u> at 1160-61.

> [An] October 2009 warrant authorized a search of Ms. Christie's computer for
> [a]ll records and information relating to the murder, neglect, and abuse of [BW]
> from June 19, 2002 (date of birth) to May 4, 2006, (date computer seized),
> including:
>
> 1. All photographs of [BW].
>
> 2. All correspondence and/or documents relating to [BW].
>
> 3. All records and information, including any diaries or calendars, showing the
> day-to-day activities of Rebecca Christie and/or [BW].
>
> 4. All addresses and/or contact information of friends, families, or acquaintances
> who may have had regular contact with Rebecca Christie and/or [BW].

---

[6] Mr. Hoang criticizes the warrants for using language such as "including, but not limited to."  Mr. Hoang asserts
that this further demonstrates the warrants are overbroad.  The court views this language as mostly irrelevant to the
inquiry here.  Had the statute itself been sufficiently narrow, the use of language like "including, but not limited to,"
would not render the warrant overbroad because the reference to the statute would provide the overall limitation.
<u>See, e.g.</u>, <u>United States v. Dunn</u>, 719 F. App'x 746, 749 (10th Cir. 2017).  By contrast, if the statute cited is not
sufficiently narrow, as is the case here, then the warrant is already overbroad and the use of "including, but not
limited to" does not add to its overbreadth.  Accordingly, the language challenged by Mr. Hoang is unimportant to
the court's conclusion.

Id. at 1165.

The defendant argued that the third request, to search "[a]ll records and information . . .
showing [her] day-to-day activities," would effectively allow the government to search every
piece of information on her computer.  The Tenth Circuit disagreed.  It emphasized that
"warrants may pass the particularity test if they limit their scope either to evidence of specific
federal crimes or to specific types of material."  Id. (internal citations omitted).  The Tenth
Circuit held that the portion of the warrant challenged by the defendant was limited by the first
sentence, which said that only records "relating to the murder, neglect, and abuse of BW" could
be searched.  Id. at 1165.  In other words, the list of items to be searched, when combined with
the initial reference to the defendant's alleged crimes, was sufficiently particular.

This case is unlike Christie because the crime identified in the opening sentence of the
warrant in that case is much clearer than the crime at issue here.  An officer executing the
Christie warrant would be able to quickly and intuitively discern whether certain information on
the computer was evidence of the defendant's murder, neglect, or abuse of her child.  The
warrants issued in this case, by contrast, provide the officers with no practical means of
determining whether the material they were seizing involved a trade secret.

The United States also cites United States v. Burke, 633 F.3d 984 (10th Cir. 2011),
United States v. Lustyik, No. 2:12-CR-645-TC, 2014 WL 1494019 (D. Utah April 16, 2014), and
United States v. Lustyik, 57 F. Supp. 3d 213 (S.D.N.Y. 2014).  But again, in each of these cases,
either the statute cited or the list of items to be seized accompanying the statute was more
particular than the warrants here.  See Burke, 633 F.3d at 992 ("[T]he charge listed on the
warrant is the sexual exploitation of a child followed by a statutory reference, a charge narrow

enough to meet the fourth amendment's requirement by bringing to officers' attention the purpose of the search."); <u>Lustyik</u>, 2014 WL 1494019 at *7 ("[T]he warrants here contain references to crimes . . . that, under the circumstances of this case, do not present the same concerns raised in <u>Leary</u>."); <u>Lustyik</u>, 57 F. Supp. 3d at 227 ("Although each Warrant broadly describes the items to be seized as 'evidence, fruits, or instrumentalities' of specified federal crimes, each also sets forth an illustrative list of items to be seized. The inclusion of an illustrative list of seizable items brings the Warrants within the Fourth Amendment's particularity parameters.").  Because these cases involve different statutes and different warrants, they are distinguishable.

Even if the court concluded the statute and the accompanying lists were sufficiently narrow, the court would still be concerned that these warrants violated the particularity requirements of the Fourth Amendment.  The <u>Leary</u> court warned:

> Even a warrant that describes the items to be seized in broad or generic terms may be valid "when the description is as specific as the circumstances and the nature of the activity under investigation permit."  <u>United States v. Santarelli</u>, 778 F.2d 609, 614 (11th Cir. 1985); <u>see</u> <u>United States v. Strand</u>, 761 F.2d 449, 453 (8th Cir. 1985) ("degree of specificity required necessarily depends upon the circumstances of each particular case").  However, the fourth amendment requires that the government describe the items to be seized with as much specificity as the government's knowledge and circumstances allow, and "warrants are conclusively invalidated by their substantial failure to specify as nearly as possible the distinguishing characteristics of the goods to be seized."  <u>United States v. Fuccillo</u>, 808 F.2d 173, 176 (1st Cir.), <u>cert. denied</u>, 482 U.S. 905, 107 S. Ct. 2481, 96 L. Ed. 2d 374 (1987).

<u>Leary</u>, 846 F.2d at 600.

Perhaps, under different facts, a citation to § 1832 and a list of devices to search would be the most the United States could do.  But that is not the case here.  BD monitored all of Mr. Hoang's computer downloading activity.  (Rawlings Affidavit ¶ 58-69, 93-94.)  The warrants,

instead of vaguely seeking all trade secret information, could have more specifically sought material that related to the exact products, prototypes, or business plans that now make up the basis of the indictment. From the Rawlings Affidavit, it appears that BD already had this information available to it from its internal monitoring of Mr. Hoang. The United States fails to address why it could not have used this information to craft a more precise, constitutionally sound, warrant that "specif[ied] as nearly as possible the distinguishing characteristics of the goods to be seized." Leary, 846 F.2d at 600.

For all of the above reasons, the court concludes the first, second, and third warrants are unconstitutionally overbroad.[7]

## II.     Fourth Warrant

To suppress evidence, Mr. Hoang must demonstrate that his own Fourth Amendment rights were violated, not the rights of a third party. United States v. DeLuca, 269 F.3d 1128, 1131-32 (10th Cir. 2001). The United States argues Mr. Hoang lacks standing to challenge the fourth warrant because it was directed at an email account belonging to Dr. Ram Chakroborty, not Mr. Hoang.

The court agrees. Mr. Hoang has no privacy interest in Dr. Chakroborty's email account, even if some of Mr. Hoang's emails were discovered there. See United States v. Young, Nos.

---

[7] In his reply, Mr. Hoang also briefly challenges the two-step process used by the third warrant to seize his emails. See generally In re the Search of Premises Known as: Three Hotmail Email Accounts, Case No. 16-MJ-8036-DJW, 2016 WL 1239916 (D. Kan. March 28, 2016) (collecting cases regarding this two-step process). But "[i]t is well settled in this circuit that the court need not consider arguments or issues first raised in a reply brief." Martinez v. Kansas, Civil No. 05-3415-MLB, 2006 WL 3350653 at *2 (D. Kan. Nov. 17, 2006) (collecting cases). And in any event, because the court has already concluded that the warrant was not sufficiently particular due to the breadth of the statute cited, the court need not reach this issue. See United States v. Shah, No. 5:13-cr-328-FL, 2015 WL 72118 *13 (E.D.N.C. Jan. 6, 2015) (declining to address this same argument regarding the two-step process used to obtain emails because there were other grounds for finding that the warrant at issue was not sufficiently particular).

2:12-CR-502-TC-DBP, 2013 WL 6665378 at *2 (D. Utah Dec. 17, 2013) ("A sender of an e-mail loses his or her reasonable expectation of privacy in an e-mail that has actually reached the intended recipient.").[8]  Accordingly, Mr. Hoang lacks standing to challenge the fourth warrant.

## III.  Good Faith Exception

The United States argues that even if the warrants were in some way deficient, the good faith exception to the exclusionary rule applies, and no evidence seized under the warrants should be suppressed.

> Evidence seized pursuant to an invalid warrant does not necessarily have to be suppressed.  In Leon, the Supreme Court recognized an exception to the exclusionary rule when officers act in good faith and in reasonable reliance on an invalid warrant in executing their search.  468 U.S. 897, 104 S. Ct. 3405.  The Court held that the purpose of the exclusionary rule is to deter police misconduct, and that the suppression of evidence obtained pursuant to a warrant should be ordered only in the unusual cases in which exclusion will further the purposes of the exclusionary rule.  Id. at 918, 104 S. Ct. 3405.  "Where an officer acting with objective good faith obtains a search warrant from a detached and neutral magistrate and the executing officers act within its scope, there is nothing to deter."  Nolan, 199 F.3d at 1184; United States v. Tuter, 240 F.3d 1292, 1298–99 (10th Cir. 2001).

United States v. Riccardi, 405 F.3d 852, 863 (10th Cir. 2005).

Satisfying the good faith exception is relatively easy.  Officers are entitled to a presumption that they acted in good faith and will only be found to have acted in bad faith when the officer "knows or should have known that a search warrant was invalid" and relies on it anyway.  United States v. Harrison, 566 F.3d 1254, 1256 (10th Cir. 2009).

---

[8] This court agrees with numerous other district courts that individuals retain a reasonable expectation of privacy in their emails when those emails are held by a third-party email provider such as Google or Comcast.  See United States v. Alvarez, Case No. 14-cr-120-EMC, 2016 WL 3163005 (N.D. Cal. June 3, 2016) (collecting cases).  The court here holds only that this privacy interest ends once the email is received by another party.  This situation is analogous to traditional mail.  Individuals retain privacy interests in their letters while they are in the possession of a third-party mail carrier (such as the U.S. Post Office) but lose that interest once they are delivered to the intended recipient.  Young, 2013 WL 6665378 at *2.

The Supreme Court recognizes four situations in which an officer would not have reasonable grounds for believing a warrant was properly issued. See Leon, 468 U.S. at 922-23, 104 S. Ct. 3405. . . . First, evidence should be suppressed if the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his "reckless disregard of the truth." Id. at 923, 104 S. Ct. 3405. Second, the exception does not apply when the "issuing magistrate wholly abandon[s her] judicial role." Id. Third, the good-faith exception does not apply when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. (quotation omitted). Fourth, the exception does not apply when a warrant is so facially deficient that the executing officer could not reasonably believe it was valid. See id.

United States v. Danhauer, 229 F.3d 1002, 1005-07 (10th Cir. 2000).

The first three situations do not apply. The first situation is not present for the reasons stated above regarding Mr. Hoang's request for a Franks hearing. Mr. Hoang does not suggest the second situation occurred here. And the court has already found that the warrants were supported by probable cause.

The only question is whether the court's findings regarding particularity suggest that the first, second, and third warrants were "so facially deficient" that Special Agent Rawlings "could not reasonably believe [they were] valid." Id. The court concludes that a reasonable officer acting in good faith would not realize the warrants lacked particularity. In most instances, citing to a statute is sufficient under Tenth Circuit precedent to satisfy the particularity requirement. Christie, 717 F.3d at 1165. Although the court agrees with Mr. Hoang that this is one of those unusual cases where citing to the statute was not enough, the court does not believe an objectively reasonable officer would have recognized the fact- and statute-specific reasons the warrant here was insufficient. Accordingly, the court concludes the good faith exception applies.

**ORDER**

For the reasons set forth above, Mr. Hoang's motion to suppress (ECF No. 104) is
DENIED.


DATED this 4th day of November, 2019.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge