IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br>v.<br><br>MINH HOANG,<br><br>                    Defendant. | MEMORANDUM DECISION AND ORDER GRANTING IN PART DEFENDANT'S MOTION TO COMPEL PARTIAL COMPLIANCE WITH SUBPOENA<br><br>Case No. 2:17-cr-444<br><br>District Judge Tena Campbell<br><br>Magistrate Judge Dustin B. Pead |

      Judge Tena Campbell referred this matter under 28 U.S.C. § 636(b)(1)(A) to determine nondispostive matters. (ECF No. 199.) Pending before the court is Defendant Minh Hoang's Motion to Compel (Partial) Compliance with Subpoena. (ECF No. 229.) Defendant previously sought compliance with two subpoenas. One subpoena sought the availability of trial witnesses and the other requested certain records. Non-party Becton Dickinson and Company (BD) moved to quash both subpoenas. Following argument on the motions to quash, the court entered an order granting in part the motion to quash trial witnesses and denied without prejudice the motion to quash records. (ECF No. 212.) The court directed the parties to meet and confer regarding the records to "narrow the requested items to those that can be reasonably provided and reviewed in light of the ongoing trial." (ECF No. 212 p. 3.) The parties met and conferred as instructed and now Defendant seeks compliance with a revised shorter document request. Having considered the parties' arguments, the court enters the following order.

      On December 16, 2019, Judge Tena Campbell entered an order permitting Defendant to issue a modified subpoena for records. (ECF No. 179.) Judge Campbell did withhold, however, any decision regarding compliance with the subpoena. Shortly thereafter non-party BD sought to

quash Defendant's subpoenas arguing there were overbroad, lacked specificity, and that the documents sought were irrelevant. The court reviewed the document requests and due in part to their breadth, the court ordered the parties to confer in an attempt to further narrow the requests. Following the discussions between Defendant and BD, Defendant is now willing to withdraw most of the prior subpoena if the following documents are produced:

1. Policies and procedures regarding trade-secret audit and/or cataloguing in the Sandy location of BD. See e.g. Gov't Ex. 1, paragraph 5.0 ("5.0 Procedures. As noted above, the specific procedures necessary to implement this Policy will vary from location to location. Each BD location at which trade secrets are present shall, with the assistance of Intellectual Property Counsel, develop and implement procedures appropriate for that location.").

2. Any trade-secret identifications or catalogues (in whatever form) resulting from any trade-secret audits or similar activity in Sandy, Utah from 2005-present. Our proposal is that any items on this list be redacted, unless they directly relate to one of the counts of the indictment. If there are none that relate to the counts of the indictment, we'd [like] a certificate of no record to that effect. See e.g. Gov't Ex. 1, para. 4.6 ("4.6 Procedure for Identifying and Cataloguing BD Trade Secrets. BD conducts regular audits to identify and catalogue BD trade secrets. The specific activities undertaken during an audit will vary from location to location, and are established and undertaken to ensure compliance with this Policy.").

3. All performance reviews for Minh Hoang from 2005-present. (We have these here and there, but there are gaps, and were hoping it wouldn't be too troublesome to just get them in one clean batch.) (ECF No. 229 p. 2.)

Rule 17 of the Criminal Rules of Procedure governs these requests. It provides in pertinent part:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1). The court may quash or modify a subpoena if "compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). Importantly, the Supreme Court has recognized that one of the "fundamental characteristics of the subpoena duces tecum in criminal

cases" is that "it was not intended to provide a means of discovery for criminal cases, …" *United States v. Nixon*, 418 U.S. 683, 698 (1974). Thus, a subpoena may not be used as "a fishing expedition to see what may turn up" but instead, needs to be "intended to produce evidentiary materials …." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951). The Tenth Circuit has characterized meeting these requirements as clearing three hurdles: "'(1) relevancy; (2) admissibility; [and] (3) specificity.'" *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002) (quoting *Nixon*, 418 U.S. at 700). Specificity is generally the "most difficult hurdle to overcome [because it] ensures that Rule 17(c) subpoenas are used only to secure for trial certain documents or sharply defined groups of documents." *United States v. Wittig*, 250 F.R.D. 548, 552 (D.Kan.2008).

**I.      The first two categories of documents sought - policies and procedures regarding trade-secret audit and/or cataloguing in the Sandy location of BD and any trade-secret audits or similar activity in Sandy, Utah from 2005 to the present.**

In an attempt to resolve these requests, the parties met and conferred as ordered by the court. During this process, "BD reiterated that the defense had been in possession of BD's Trade Secret Policy for a considerable amount of time and that having a non-party search for all documents containing such information at this late stage is overly burdensome." (ECF No. 234.) The parties sought a compromise, however, via stipulation concerning BD's trade secrets. On January 14, 2020, the Government sent the following proposed Stipulation of Facts:

1. BD documents certain trade secrets through Invention Disclosure Records (IDRs). BD expects employees to submit trade secrets that are new product designs or improvements in IDRs. These IDRs are reviewed by a BD intellectual property (IP) review committee. These IDRs can result in a decision by BD to (i) seek patent protection, (ii) continue to maintain as a trade secret, or (iii) protect portions by patent and other portions as trade secrets. These decisions are generally recorded.

2. BD documents certain other trade secrets through audits of its manufacturing site processes. BD's Sandy site is one such manufacturing site. These audits

facilitate the identification and recording of BD manufacturing trade secrets. Once identified, these are recorded and tracked by BD's legal department.

3. The majority of BD's trade secret information is neither submitted through an IDR nor identified during a manufacturing site audit.

4. The alleged trade secrets identified in Counts 1 to 8 and 10 to 11 of the indictment are not recorded in an IDR and are not identified in any list of trade secrets recorded through the process of submitting IDRs to the IP Committee.

5. The alleged trade secrets identified in Counts 1 to 8 and 10 to 11 of the indictment were not audited during BD's audits of its manufacturing site processes (including at the BD Sandy site) and are not recorded in any list resulting from such audits. ([ECF No. 234-2](#).)

Defendant rejected this proposed Stipulation of Fact and sent a counterproposal to the Government that struck paragraphs one through three and set forth the following:

1. The alleged trade secrets identified in Counts 1 to 8 and 10 to 11 of the indictment are not recorded in an Invention Disclosure Record (IDR) and are not identified in any list of trade secrets recorded through the process of submitting IDRs to BD's Intellectual Property (IP) Committee.

2. The alleged trade secrets identified in Counts 1 to 8 and 10 to 11 of the indictment are not recorded in any list resulting from BD's audits of its manufacturing site processes (including at the BD Sandy site).

3. BD has never developed specific procedures for identifying and protecting trade secrets in BD's Sandy facility, as described in Exhibit 1, para. 5.0. ([ECF No. 234-3](#)).

BD objects to the counterproposal arguing that without the context found in the first proposal, the stipulation would be misleading. ([ECF No. 234](#) p. 2.)

   Before turning to revised requests one and two, and the competing stipulations, the court notes that it views Defendants requests through the lens of the Tenth Circuit hurdles (1) relevancy; (2) admissibility and (3) specificity. *See Morris*, 287 F.3d at 991. Under the first prong of relevancy, it is clear to the court that any request by Defendant concerning trade-secrets, must be confined to those at issue in this case. Audits or catalogues of trade-secret identifications for trade-secrets not identified in the indictment would be irrelevant to the instant

matter. In addition, any determination of admissibility by the undersigned is an initial determination, subject to Judge Campbell's final determination, based on the testimony and evidence at trial.

The court has carefully reviewed the proposed stipulations and agrees with BD's assessment that Defendant's proposal lacks context. The jury needs to be able to weigh the entire context of the trade-secrets at issue. For example, if BD places some trade secrets in box A (IPRs) or box B (Audits) while placing others only in box C (another category), it would be improper to only refer to a trade-secret in box C as missing in box A and B, without noting that it could be contained in box C. Certainly, Defendant may point to the fact that the trade-secrets at issue were not part of the IPR process or audits, but this should not be the end of the provided information. Therefore, the court ORDERS BD to certify that the first proposed stipulation is correct. The court finds this adequately addresses Defendant's first two revised requests and balances the need for evidentiary materials without engaging in a fishing expedition. *See Bowman Dairy Co.*, 341 U.S. at 221.

**II. All performance reviews for Minh Hoang from 2005-present.**

The court next turns to this revised request. In response, BD notes it "does not object to providing the performance evaluations for 2005-2010, …" (ECF No. 234 p. 4.) The indictment alleges "From on or about July 15, 2013 until on or about September 15, 2015," Defendant engaged in the putative theft of trade secrets. (ECF No. 1 p. 16.) Although performance evaluations for 2005 to 2010 are of somewhat questionable relevance in the court's view due to their proximity to the indictment time frame, the court acknowledges BD's willingness to cooperate, and therefore orders that those performance reviews be produced. Defendant states that they have some reviews "but there are gaps" and wants a "clean batch." Thus, it appears

5

Defendant already possesses most of, if not all, the reviews from 2011 to present. As such, Defendant is ordered to review what performance evaluations it already has and provide specific details about anything that is missing. BD is then to fill in those holes for performance reviews from 2011 to 2017. The court finds performance reviews up to two years following Defendant's termination, meet the three hurdles set forth by the Tenth Circuit.

## ORDER

Therefore, it is ORDERED as follows:

1. Defendant's Motion to Compel (Partial) Compliance with Subpoena is GRANTED in PART.
2. BD is to certify that the proposed Government stipulation is correct.
3. BD is to provide Defendant's performance reviews from 2005 to 2010, and following a thorough review by Defendant, fill in any gaps for reviews from 2011 to 2017.
4. All information ordered is to be provided on or before Friday, January 24, 2020.

IT IS SO ORDERED.

DATED this 17 January 2020.

_____
Dustin B. Pead
United States Magistrate Judge